## UNITED STATES

v.

**Ervin WILCOX, 357 48 7262, Aviation Electronics Technician Airman (E-3), U. S. Navy.**

**NCM 77 1106.**

U. S. Navy Court of Military Review.

Sentence Adjudged 26 Jan. 1977.

Decided 19 Sept. 1977.

CDR Carl H. Horst, JAGC, USN, Appellate Defense Counsel.

CAPT Geoffrey D. Fallon, USMCR, Appellate Government Counsel.

Before CEDARBURG, C. J., and ROOT and GREGORY, JJ.

CEDARBURG, Chief Judge:

Appellant was tried by a special court-martial including members. Contrary to his pleas, he was convicted of two specifications of unauthorized absence totaling 13 days, disrespect to a superior commissioned officer, attempt to escape from custody, assault consummated by a battery and wrongful communication of a threat alleged as violations of Articles 86, 89, 80, 128 and 134, respectively, of the Uniform Code of Military Justice, 10 U.S.C. §§ 886, 889, 880, 928, 934. The court members imposed a sentence consisting of a bad conduct discharge, confinement at hard labor for four months and reduction to pay grade E–1. The general court-martial authority who took the initial action, after the convening authority disqualified himself because of an accuser motion directed against him at trial,

approved the bad conduct discharge, confinement at hard labor for four months and reduction to pay grade E–1, but additionally suspended the bad conduct discharge.

Appellant assigns a number of alleged errors, none of which have merit. Because the first error assignment seeks to further tighten the standard of expedition for post-trial action by the convening/supervisory authority, we consider it appropriate to address the issue it presents in some detail.

Appellant's trial was completed on 26 January 1977, at which time also the confinement portion of his sentence commenced. Appellant concluded that confinement on 25 April 1977, the 89th day of confinement. He was released from the Correctional Facility pursuant to a permanent release order executed by the staff judge advocate of Commander Naval Air Force, Atlantic, the officer who took initial action as a general court-martial authority. The initial action was then taken 7 days later on 2 May 1977, 96 days after trial.

Appellant concedes that the time requirement for completing the initial action mandated by *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), which is tied to service of confinement, was not violated in this case. But he urges further tightening of the *Dunlap* standard, citing *United States v. Ledbetter*, 25 U.S.C.M.A. 51, 54 C.M.R. 51, 2 M.J. 37 (1976).

We accept, for purposes of this discussion, that the release on the 89th day of confinement was prompted by a recognition that a failure to do so would require dismissal of the charges regardless of any pertinent but not "extraordinary" reasons for the delay or the absence of any prejudice to the accused. Faced with this decision, we feel the convening authority, through his staff judge advocate, took the only action available to him which permitted review of the conviction and sentence on its merits. Chief Judge Fletcher warned in *Ledbetter*, 2 M.J. at 40 n.5 of the "continuing risks associated with falling into the last minute release syndrome" and intimated that a "blatant" attempt to avoid the speedy disposi-

tion standard of *Dunlap* would prompt him to close the "perceived confinement 'loophole.'" Chief Judge Fletcher, however, announced the unwillingness of the Court of Military Appeals at that time to further tighten the *Dunlap* standard, thereby eliminating one of the few remaining safety valves available to those charged with the administration of justice at the trial level.

We are fully in accord that those few remaining safety valves should be retained in the interest of both objective justice and promoting acceptance by the military society of the law which governs it. "Law that is rejected by the people it undertakes to control, or that is received by them with doubts and misgivings, is not good law, and may not even be accepted as law at all. To a great extent the validity of law for a people depends on their confidence in it." Leflar, *Some Observations Concerning Judicial Opinions*, 61 Colum.L.Rev. 810–13, 819–20 (1961), *reprinted in* R. Leflar, *Appellate Judicial Opinions*, 82 (1974).

Judge Perry's reflective dissertation on the appropriateness and necessity for dismissal of charges as a remedy for post-trial delay, reviewing the settled law prior to *Dunlap* in *United States v. Johnson*, 3 M.J. 143, 150–151 (C.M.A.1977), warrants examination anew of the salutary effects of a standard of expedition utilizing reasonableness and prejudice as the criteria for determining if remedial action is warranted; and, if warranted, the scope of the remedy required to vindicate the right.

The settled law prior to *Dunlap* did not mandate the all too often drastic result, unjust to society and destructive of confidence in the fairness of the law, which flows from a dismissal ordered after an inelastic and mechanical calculation of the passage of a certain number of days without reference, for all practical purposes, to factors relevant and pertinent to a determination of the issue of whether an accused has been denied a speedy disposition of his case and how he may have been harmed thereby. The prior law avoided while the present law ". . . provide[s] a means

where a person found guilty beyond a reasonable doubt in an error-free hearing may escape any sanction." *Dunlap v. Convening Authority, supra,* at 142, 48 C.M.R. at 757 (Duncan, C. J., dissenting opinion).

The initial actions of the convening/supervisory authorities follow a verdict of guilty and a sentence imposed by a court-martial with all of the legal safeguards guaranteed in that trial forum. The function of the convening and supervisory authorities is essentially review of a conviction and sentence. The critical reasons for the disdain expressed and sanctions imposed for pretrial delay are not present after the rendition of a verdict of guilty and sentence. The presumption of innocence has been overcome, witness availability and testimonial recollection is of substantially diminished importance and personal efforts in defense, hobbled by pretrial confinement, are not a major impediment in the progress of review on the record. The necessity for speed in review procedures is of a vastly different magnitude than that which motivates speedy trial remedies. This accounts for the uniform lack of sanctions for post-trial delay in American jurisprudence with the notable exception of these applied in the military justice system for delay at the lowest level of review. As Judge Perry observes in *United States v. Johnson, supra,* 3 M.J. at 150 n.23, "[w]hile an appellate court is not wholly unanswerable for seemingly inordinate periods of time utilized in disposing of cases before it, see *Higdon v. Bailey,* Misc. Docket No. 75–62, (C.M.A. Jan 14, 1976), the interests involved at the appellate level and the very functions of appellate courts make a certain amount of delay 'normal.' "

Appellate courts obviously have a broader role of providing decisional law, direction, and guidance to the bench and bar, a function not shared by convening/supervisory authorities. However, as regards a decision on the merits of an individual case proceeding to finality, timeliness in the completion of appellate proceedings is a responsibility shared by both the convening/supervisory authorities and the appellate courts. "The law-making aspect of the common law appellate judicial process does not outweigh the dispute-deciding aspect of it, even though the latter is sometimes overshadowed. Actually, the theory is that the dispute-deciding part is the court's main job, and that the law-making part is a consequence of the decision of the dispute because that is the way that we think law should develop." *Appellate Judicial Opinions, supra,* at 82. Despite this, the standards of accountability for delay are finite and inflexible for completion of the appellate review function by the convening/supervisory authority; yet largely amorphous and malleable when applied to the appellate courts in the military justice system. This is particularly anomalous since the sole concern of these appellate courts is the administration of military justice; whereas, in the overwhelming majority of cases, convening/supervisory authorities have a primary mission of training and preparing, with limited resources, an effective fighting force, with which the system of military justice is only a peripheral, albeit vital, adjunct.

We conclude that elimination of one of the few remaining safety valves for the already strict standard for expedition demanded of convening/supervisory authorities in initially reviewing court-martial convictions is not justified. We further believe that, in the interests of achieving objectively perceived justice and enhancing confidence in our system, rules utilizing standards of "reasonableness" and "lack of prejudice" provide feasible criteria which are both adequate to promote a fair and efficient operation of the system and are manifestly preferable to reliance upon a facially simple but rigid mathematical formula which admits no toleration for resort to reason.

The findings and sentence as approved on review below are affirmed.

Judge ROOT and Judge GREGORY concur.